LOCAL UNION NO. 487, IAFF AFL-CIO, Local Union No. 29, Professional Police Association, Police Command Group; Local Union No. 9, Eau Claire Professional Police Association, (Patrol Group), David Patrow, Brad A. Gough, and David Malone, Plaintiffs-Respondents,

v.

CITY OF EAU CLAIRE, Eric Anderson, James McFarlane and John Brown,† Defendants-Appellants.

Court of Appeals

*No. 86–1637. Submitted on briefs June 10, 1987.—Decided September 8, 1987.*

(Also reported in 415 N.W.2d 543.)

† Petition to review granted.

438

For the defendants-appellants there were briefs by *Frederick W. Fischer,* City Attorney of Eau Claire.

For the plaintiffs-respondents there was a brief by *Richard V. Graylow* of *Lawton & Cates, S.C.,* of Madison.

For the League of Wisconsin Municipalities there was an amicus curiae brief by *James H. Schneider,* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The City of Eau Claire appeals a judgment and order permanently enjoining the city from implementing a public safety officer program. The issue is whether under the Wisconsin Constitution and sec. 62.11(5), Stats., the City of Eau Claire possesses sufficient home rule authority to establish its public safety officer program. Because we conclude that the City of Eau Claire does not have the authority to create such a program, we affirm.

The City of Eau Claire embarked on a two-year test period in 1984 to implement a public safety officer

(PSO) program. Under the program, a PSO is a police officer trained in fire fighting techniques and expected, while on police patrol, to respond to fire calls and assist in fire fighting. At those times, the officer would be under the fire department command. The PSO training was scheduled to commence in July 1985.

The respondents filed this action together with a motion for a temporary injunction to restrain the initiation of the PSO training. The trial court denied the motion for a temporary injunction, but later declared Eau Claire's PSO program invalid and issued a permanent injunction restraining its implementation. The trial court held that because the PSO program is a subject of paramount state-wide concern and not a local matter within the municipality's home rule powers, the city lacks the necessary authority to implement the proposed program.

■

Whether a matter is one of local or state-wide concern and within a municipality's regulatory power is a question of law that we review independently. *Anchor Savings & Loan Ass'n v. EOC,* 120 Wis. 2d 391, 394, 355 N.W.2d 234, 236 (1984).

■

Municipalities in Wisconsin have no inherent powers. *City of Madison v. Schultz,* 98 Wis. 2d 188, 195, 295 N.W.2d 798, 801 (Ct. App. 1980). However, they are authorized to regulate local affairs by the Wisconsin Constitution and by sec. 62.11(5). Article XI, sec. 3, of the Wisconsin Constitution, known as the home rule amendment, provides in part:

(1) Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and

441

to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

Section 62.11(5), provides:

POWERS. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.

The city argues that the PSO position is a local concern. We disagree.

There is no express statute permitting municipalities to establish public safety officers. A review of the Wisconsin statutes indicates that the regulation and separation of police and fire departments are matters of paramount state-wide concern and that the state requires uniformity in departments' organization.

The legislature declares sec. 62.13, Stats., which provides the broad organizational structure for police and fire departments, as an "enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments." Section 62.13 also treats police and fire functions as separate and distinct. The departments are separate regarding the chief's and subordinate's appointments, discipline,

removal, rest days, hours of labor, and departmental organization. *See* sec. 62.13(3), (4), (5), (7m), (7n), (11), and (11a), Stats.

Other statutes also indicate the legislature's intent that police and fire departments be separate and distinct. Both police officers and fire fighters are protected differently under disability and death benefits under sec. 40.65, Stats., because there is a statutory presumption of occupational disability for fire fighters that does not apply to police. *See* sec. 891.45, Stats.

The city contends that the PSO position is authorized by the "temporarily assigned" language in sec. 40.02(48), Stats. Section 40.02(48) states that a police officer who is regularly assigned as a patrol officer may, on occasion, be assigned to other duties. The city characterizes the PSO as a police officer who performs primarily police functions, but who would occasionally perform fire fighting duties.

A PSO would be permanently "on call" to fight fires. Whether a PSO would only occasionally fight fires is not crucial. The dispositive aspect is that a PSO would always be expected to be available to fight fires as part of his or her job. Thus, a PSO would always be "on call" as a fire fighter. This is not a temporary position and is beyond the language of "temporarily assigned" provided in sec. 40.02(48).

■

Accordingly, we conclude that because the legislature has declared the regulation of police and fire departments to be a matter of state-wide concern and that the functions are to be separate and distinct, the City of Eau Claire is not empowered to act to the contrary under the home rule amendment.

In the alternative, the city argues that it possesses sufficient authority under sec. 62.11(5). In matters of state-wide concern, a municipality may act if it is properly within the home rule authority, unless the legislature has by implication withdrawn the city's power to act in an inconsistent manner. *See Anchor Savings & Loan Ass'n,* 120 Wis. 2d at 395, 355 N.W.2d at 237.

The Wisconsin Supreme Court has established a four-criteria test to determine whether home rule power exists in areas determined to be matters of state-wide concern:

> (1)   whether the legislature has expressly withdrawn the power of municipalities to act;
> (2)   whether the ordinance logically conflicts with the state legislation;
> (3)   whether the ordinance defeats the purpose of the state legislation; or
> (4)   whether the ordinance goes against the spirit of the state legislation.

*Id.* at 397, 355 N.W.2d at 238 (citations omitted).

Under this test, which involves many of the considerations discussed, we conclude that the legislature did not intend the municipalities to be empowered to combine police and fire functions. Even though the legislature has not expressly withdrawn the power of cities to establish a PSO program, the city fails to meet the test of the three remaining criteria.

Applying the second criterion, we conclude the PSO program would logically conflict with the legislature's intent to keep the two departments separate and distinct. We have already cited various statutes that require state-wide uniformity for police and fire departments. From an examination of these statutes, we perceive a legislative intent to require separate and distinct police and fire functions because the statutes provide separate organization, rules, and benefits for police officers and fire fighters. The Eau Claire PSO program violates the mandate of uniformity and, by combining these functions, conflicts with the intent that separate and distinct departments be maintained.

Under the third criterion, the PSO program defeats the state's purpose of providing a uniform regulation of police and fire departments as articulated in sec. 62.13(12), Stats. The purpose of uniform regulations is to have the same organizational structure, training standards, and benefits throughout Wisconsin. However, the Eau Claire PSO program conflicts with this purpose by creating different organizational structures, training, and benefit possibilities.

Under the fourth criterion, the PSO program is contrary to the spirit of state legislation to maintain separate and distinct police and fire functions. By combining these functions the city eliminates the state's ability to adequately provide training standards, retirement benefits, worker's compensation provisions, and organizational requirements that ap-

ply to police officers and fire fighters throughout the state.

If the legislature intends municipalities to be empowered to establish PSO programs and combine the police and fire functions, it should expressly act. However, in the absence of any legislative action, we conclude that the legislature has implicitly withdrawn the municipalities' authority to establish PSO programs such as the one proposed by Eau Claire.

Accordingly, we conclude that the establishment of a PSO program is a subject of state-wide concern. We also conclude that the legislature, by acting in related areas, has not granted the municipalities the power to create such a PSO program. We affirm the trial court's decision enjoining the City of Eau Claire from implementing its proposed public safety officer program.

*By the Court.*—Judgment and order affirmed.