VICTOR R. DYDYN ET AL. *v.* DEPARTMENT OF
LIQUOR CONTROL
(5302)
(5304)
(5306)
(5308)

PAUL J. CIANCI ET AL. *v.* DEPARTMENT OF
LIQUOR CONTROL
(5303)
(5305)
(5307)
(5309)

HULL, SPALLONE and BIELUCH, Js.

Argued June 4—decision released September 22, 1987

*Martin Margulies,* with whom were *Carolyn Comerford* and *Leslie Byelas,* for the appellants (plaintiffs).

*Robert F. Vacchelli,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Richard M. Sheridan,* assistant attorney general, for the appellee (defendant).

HULL, J. The plaintiffs in this appeal are permittees of establishments that dispense alcoholic beverages and also provide live entertainment by female dancers. Pursuant to General Statutes § 4-183,[1] the plaintiffs sought

---

[1] General Statutes § 4-183 provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict

judicial review in the trial court from decisions of the department of liquor control (department) suspending their liquor permits. The trial court upheld the department's suspensions. In this appeal, the plaintiffs claim that the trial court erred (1) in upholding the constitutionality of § 30-6-A24 (d) and (e) of the regulations of Connecticut state agencies, concerning liquor control,[2] under the twenty-first amendment to the United States constitution,[3] (2) in concluding that the challenged regulation does not infringe on the plaintiffs' rights to free

---

between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

[2] Section 30-6-A24 (d) and (e) of the regulations of Connecticut state agencies, governing liquor control, provide in relevant part: "(d) No person shall be employed or otherwise used on permit premises while such a person is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. No person on the permit premises over whom the permittee can reasonably exert control, shall be permitted to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person, nor shall any person or employee be permitted to wear or use any device or covering, exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion thereof.

"(e) No entertainment shall be performed on any bar. No entertainer, dancer, or other person shall perform acts of or acts which simulate: sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; the touching, caressing or fondling of the breasts, buttocks, anus or genitals; the displaying of any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. No permittee shall permit any person or entertainer to remain in or upon the permit premises who exposes to public view any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. Entertainers must perform in one location and entertainers may not mingle with the patrons. However, the prohibition contained in the last sentence may be waived by the department upon written request indicating the desirability and necessity for entertainers to mingle with the patrons."

[3] The United States Constitution, amendment XXI, § 2 provides in relevant part: "The transportation or importation into any State, Territory

expression under article first, §§ 4 and 5 of the Connecticut constitution,[4] (3) in concluding that the challenged regulation does not infringe on the plaintiffs' equal protection rights under article first, §§ 1 and 20 of the Connecticut constitution,[5] and (4) in holding that the challenged regulation does not violate the plaintiffs' due process rights and that the department did not act in excess of its authority in promulgating the regulation.

The following facts are not in dispute. The plaintiff Victor R. Dydyn is the permittee of the Culinary Cafe, Inc., in Newington. The plaintiff Paul J. Cianci is the permittee of the Dealer's Choice Lounge, Inc., in Hartford. In each case,[6] female dancers were observed by plainclothed detectives to be performing at the permit premises in various states of nudity, in violation of liquor control regulation § 30-6-A24. In particular cases, dancers were also observed fondling their breasts and genital areas, allowing customers to place money in their costumes, mingling with and kissing patrons, and simulating sexual intercourse during their routines. In the cases involving Cianci and the Dealer's Choice Lounge, Inc., the permit to sell liquor was suspended

___

or possession of the United States for delivery or use therein of intoxicating liquors, *in violation of the laws thereof,* is hereby prohibited." (Emphasis added.)

[4] Article first, § 4, of the Connecticut constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

Article first, § 5, of the Connecticut constitution provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

[5] Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

Article first, § 20, of the Connecticut constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

[6] This case is comprised of eight separate appeals, four involving each plaintiff. They have been combined for hearing and decision.

by the department for a total of forty-five days. In the cases involving Dydyn and the Culinary Cafe, Inc., the permit was suspended for a total of thirty-five days.

I

The plaintiffs' first claim is that the court erred in upholding the constitutionality of the department's regulation under the twenty-first amendment to the federal constitution. Their second claim is that the department's regulation prohibiting nude dancing in establishments with liquor permits is violative of their constitutional right to free speech under article first, §§ 4 and 5 of the Connecticut constitution. These arguments are in effect, that nude and semi-nude dancing is a protected form of expression that cannot be curtailed by this regulation. We disagree.

The provisions of section 2 of the twenty-first amendment to the United States constitution have been interpreted as granting the states virtually complete control over whether to permit the importation and sale of liquor. *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U.S. 97, 110, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980).[7] The amendment has been recognized as conferring more than the normal state authority over public health, welfare and morals. *California* v. *LaRue*, 409 U.S. 109, 114, 93 S. Ct. 390, 34 L. Ed. 2d 342 (1972). Pursuant to the twenty-first amendment, a state can ban topless dancing and other nude conduct, regardless of whether it is obscene, as

---

[7] In *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum Inc.*, 445 U.S. 97, 107, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980), the court stated that "[i]n determining state powers under the Twenty-first Amendment, [this] court has focused primarily on the language of the provision rather than the history behind it. *State Board* v. *Young's Market Co.*, 299 U.S. 59, 63–64 [57 S. Ct. 77, 81 L. Ed. 38, reh. denied, 299 U.S. 623, 57 S. Ct. 229, 81 L. Ed. 458] (1936)." In a footnote, the court went on to state that this "approach is supported by sound canons of constitutional interpretation and demonstrates a wise reluctance to wade into the complex currents beneath the congressional proposal . . . ." Id., 107 n.10.

part of its liquor licensing regulatory scheme. See *New York State Liquor Authority* v. *Bellanca,* 452 U.S. 714, 101 S. Ct. 2599, 69 L. Ed. 2d 357 (1981) (*Bellanca I*); *Doran* v. *Salem Inn, Inc.,* 422 U.S. 922, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975); *California* v. *LaRue,* supra.[8] The United States Supreme Court has held that a state's power to ban the sale of alcoholic beverages under the twenty-first amendment entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs. *Bellanca I,* supra, 717.

The plaintiffs, however, do not make their argument under the federal constitution. They assert that the department's regulation is vulnerable under the free speech provisions of our state constitution because there is no state constitutional enactment similar to the twenty-first amendment. There is a split of authority as to the effect of a lack of a provision similar to the twenty-first amendment in a state's constitution. Some jurisdictions hold that the twenty-first amendment of the federal constitution is not applicable to the states. See *Bellanca* v. *New York State Liquor Authority,* 54 N.Y.2d 228, 429 N.E.2d 765, 445 N.Y.S.2d 87 (1981) (*Bellanca II*) (on remand from the United States Supreme Court); see also *Mickens* v. *Kodiak,* 640 P.2d 818 (Alaska 1982); *Commonwealth* v. *Sees,* 374 Mass. 532, 373 N.E.2d 1151 (1978). Other jurisdictions hold that the twenty-first amendment is applicable to the states. See *Daytona Beach* v. *Del Percio,* 476 So. 2d 197 (Fla. 1985); and *Nall* v. *Baca,* 95 N.M. 783, 626 P.2d 1280 (1980).

---

[8] The power to regulate liquor is not limitless, however. The states still cannot "insulate the liquor industry from the Fourteenth Amendment's requirement of equal protection, *Craig* v. *Boren,* 429 U.S. 190, 204–209 [97 S. Ct. 451, 50 L. Ed. 2d 397] (1976), and due process, *Wisconsin* v. *Constantineau,* 400 U.S. 433, 436, [91 S. Ct. 507, 27 L. Ed. 2d 515] (1971)." *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* 445 U.S. 97, 108, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980).

We find logic in the latter cases, and in the dissents in *Bellanca II.* "The Supreme Court has flatly and squarely held that the 'State has absolute power under the Twenty-first Amendment to prohibit totally the sale of liquor within its boundaries. . . . It is equally well established that a State has broad power under the Twenty-first Amendment to regulate the times, places and circumstances under which liquor may be sold.' (*Bellanca I,* supra, 715). To now require, as a precondition to the exercise of such power in a manner expressly condoned by the highest court of this Nation, that the State must enact its own counterpart of the Twenty-first Amendment, is without reason or authority." *Bellanca II,* supra, 238–39 (Gabrielli, J., dissenting).

Contrary to the plaintiffs' view, "when a State acts to regulate the sale of liquor within its boundaries, its authority stems from *both* its general police power *and* directly from the Twenty-first Amendment to the United States Constitution. Indeed, rather than merely restoring to the States their pre-existing police power over the sale of alcoholic beverages by repealing the Eighteenth Amendment, the second section of the Twenty-first Amendment expressly reserves to the States a power to regulate traffic in liquor: 'The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, *in violation of the laws thereof,* is hereby prohibited.' Thus, although the States 'require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare and morals.' (*California* v. *LaRue,* [supra]). This independent right to regulate the sale of liquor under the Federal Constitution has been interpreted by the Supreme Court

as not only creating an exception to the commerce clause (e.g., *J. Seagram & Sons* v. *Hostetter,* 384 U.S. 35, 41–42 [86 S. Ct. 1254, 16 L. Ed. 2d 336, reh. denied, 384 U.S. 767, 86 S. Ct. 1583, 16 L. Ed. 2d 679 (1966)]; *Ziffrin, Inc.* v. *Reeves,* 308 U.S. 132 [60 S. Ct. 163, 84 L. Ed. 128 (1939)]; *State Board* v. *Young's Market Co.,* 299 U.S. 59 [57 S. Ct. 77, 81 L. Ed. 38, reh. denied, 299 U.S. 623, 57 S. Ct. 229, 81 L. Ed. 458 (1936)]); but, more recently, as qualifying rights guaranteed by the First Amendment as well—at least insofar as certain forms of nude and partially nude entertainment are concerned. ([*Bellanca I,* supra]; *California* v. *LaRue,* supra.)" *Bellanca II,* supra, 243–44 (Jason, J., dissenting). This federally recognized power on the part of the states to control the commercial distribution of alcoholic beverages within their respective boundaries does not exist in a vacuum; nor is it limited to the confines of the federal constitution. The power conferred by the twenty-first amendment does not simply evaporate once the analysis shifts to a determination of the right to free expression under our state constitution. Rather, this independent, federal right to control the traffic in liquor subsists, and, pursuant to the supremacy clause,[9] must be given full recognition and effect, even when we consider the provisions of our own constitution.

The plaintiffs urge us, even if we find the twenty-first amendment applicable to the state constitution, to read the free speech provision of the Connecticut constitution more broadly than that of the federal constitution, thus making the protections greater under the state constitution. This we decline to do. A similar request was presented to our Supreme Court in *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 469 A.2d 1201

---

[9] The supremacy clause; U.S. Const., art. VI clause 2; provides in relevant part: "This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

(1984). In *Cologne*, the plaintiffs urged the court to find that the Connecticut constitution provides greater protection to expressive activity on private property than does the federal constitution. Our Supreme Court refused to do so, finding nothing in the history of the Connecticut constitution to warrant a distinction between the Connecticut and federal free speech provisions. Id., 62–63. Similarly, in the present case, we find the variations in phraseology between the federal and state constitutional free speech provisions to be without relevant significance. On previous freedom of speech issues, our courts have adopted the reasoning of cases interpreting the first amendment of the United States constitution. See *Cologne* v. *Westfarms Associates*, supra; *State* v. *Andrews*, 150 Conn. 92, 186 A.2d 546 (1962); *State* v. *Cantwell*, 126 Conn. 1, 8 A.2d 533 (1939). The plaintiffs have given us no reason or authority for the proposition that the state freedom of speech provisions should be read more broadly than their federal counterparts.[10] We therefore adopt the reasoning and result of the United States Supreme Court decision in *Bellanca I*, supra, *Doran* v. *Salem Inn, Inc.*, supra, and *California* v. *LaRue*, supra, that the "State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where [nude or] topless dancing occurs." *Bellanca I*, supra, 717. Thus, the trial court correctly upheld the department's determination in this respect.

---

[10] The plaintiffs also assert that there is a fundamental first amendment right to freedom of expression involved in this case. We disagree. The regulation in question does not prohibit nude or semi-nude dancing. It only regulates liquor sales. A permit to sell liquor is a personal privilege, good for one year after issuance and revocable in the discretion of the department, subject to appeal. See General Statutes § 30-14. Moreover, one does not have a fundamental right to a liquor permit. See *Joseph H. Reinfeld, Inc.* v. *Schieffelin & Co.*, 94 N.J. 400, 466 A.2d 563 (1983); *Three K. C.* v. *Richter*, 279 N.W.2d 268, 275 (Iowa 1979).

## II

The plaintiffs' next argument is that the regulation violates their equal protection rights under the Connecticut constitution, article first, §§ 1 and 20. They argue that the regulation is invalid under the state equal rights amendment because, by specifically referring to female anatomy, it creates a suspect class. In *Mississippi University for Women* v. *Hogan,* 458 U.S. 718, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982), the United States Supreme Court enunciated an "intermediate" standard for application to gender-based classifications. Under that standard, a statute or regulation which treats males and females differently violates the equal protection clause unless the classification is *substantially related to the achievement of an important government interest.* Id., 724. The trial court in this case found that the regulation was not gender-based and therefore did not require review under the standard set forth in *Hogan.* We are not persuaded, however, by the argument that the regulation does not classify on the basis of sex. When a statute or regulation distinguishes between male and female anatomy, we hold that the test created in *Hogan* must be applied. It does not necessarily follow, however, that the application of the *Hogan* test will alter the outcome of the decision.

Although the plaintiffs attempt to blur the clear distinction, there can be no doubt that in our society female breasts, unlike male breasts, constitute an erogenous zone and are commonly associated with sexual arousal. See *Seattle* v. *Buchanan,* 90 Wash. 2d 584, 587, 584 P.2d 918 (1978); *People* v. *Craft,* 134 Misc. 2d 121, 509 N.Y.S.2d 1005 (1986). Further, courts have held that "[i]n our culture, for the purpose of this type of ordinance, female breasts are a justifiable basis for a gender-based classification. See generally *Mississippi University for Women* v. *Hogan,* [supra]." *Tolbert* v.

*Memphis,* 568 F. Sup. 1285, 1290 (W.D. Tenn. 1983). The record before us indicates that establishments which feature female topless dancers have a higher rate of public disturbance than those that do not offer such entertainment. As in the cases cited above, there was testimony at the permit revocation hearings that a large number of fights and arrests for prostitution and public indecency occur at establishments featuring female dancers. We conclude that the classification created by the department's regulation is substantially related to an important governmental interest, and we therefore find no merit to the plaintiffs' claim.

### III

The plaintiffs' final argument is twofold. The first claim is that the department acted outside its scope of authority in promulgating the regulation in question. The second claim is that due process was not afforded to the plaintiffs because the regulation was written without the benefit of any "tests, reports, surveys, hearings or witnesses," and because of a lack of a documented basis for the departments "findings and conclusions."

General Statutes § 30-6 grants to the department the broad power to "make all necessary regulations . . . for insuring proper, safe and orderly conduct of licensed premises." The challenged regulation does not exceed the permissible limits of the department's rulemaking authority. See *Dadiskos* v. *Liquor Control Commission,* 150 Conn. 422, 427–28, 190 A.2d 490 (1963).

The department's regulation prohibiting nude and semi-nude dancing in establishments with liquor permits is clearly designed to reduce the number of incidents of unlawful behavior and disorderly conduct in bars.[11] The need for this type of regulation has been

---

[11] See, e.g., comments of Commissioner David L. Snyder at the public hearing on the regulation (1976): "I think also it should be pointed out that

repeatedly upheld. *California* v. *LaRue,* supra, 116;[12]
*Tolbert* v. *Memphis,* supra, 1290. In fact, this very regu-
lation was held to be rationally related to its purpose
and was therefore deemed constitutional in *Winer* v.
*Healy,* Civ. No. H-79-267 (D. Conn. 1979), and in
*Inturri* v. *Healy,* 426 F. Sup. 543 (D. Conn. 1977).

Moreover, it must be noted that at the time the regu-
lation was promulgated, the Uniform Administrative
Procedure Act did not require that "findings and con-
clusions" be made before regulations could be enacted
by an administrative agency.[13] Courts will not, sua

it has been the experience of this Commissioner that this regulation served
to prevent unlawful and disorderly conduct on the permit premises. We
have had cases, where after a violation of this regulation has occurred, there
have been brawls. There have been arrests for sexual contact. It has served
a purpose and it continues to serve a purpose. I can only speak for myself,
but that has been my experience."

[12] The transcript of the March 26, 1976 hearing on the regulation, which
is part of the record before us, reflects that the proposed regulations were
in fact modeled after the California regulations found constitutional in
*California* v. *LaRue,* 409 U.S. 109, 93 S. Ct. 390, 34 L. Ed. 2d 342 (1972),
reh. denied, 410 U.S. 948, 93 S. Ct. 1351, 35 L. Ed. 2d 615 (1973). In *LaRue,*
the court stated: "Nothing in the record before us or in common experi-
ence compels the conclusion that either self-discipline on the part of the
customer or self-regulation on the part of the bartender could have been
relied upon by the Department to secure compliance with such an alterna-
tive plan of regulation. The Department's choice of a prophylactic solution
instead of one that would require its own personnel to judge individual
instances of inebriation cannot, therefore, be deemed an unreasonable one
under the holdings of our prior cases." Id., 116. Further, in *New York State
Liquor Authority* v. *Bellanca,* 452 U.S. 714, 718–19, 101 S. Ct. 2599, 69
L. Ed. 2d 357 (1981), the court made the broad statements that " '[i]t has
long been held that sexual acts and performances may constitute disorderly
behavior within the meaning of the Alcoholic Beverage Control Law
. . . .' "

[13] It should also be noted that the purpose of the regulation was not to
create an entirely new regulatory scheme, but to revamp regulations already
in existence. The predecessor to the challenged regulation read in relevant
part as follows:

"(a) No disturbances, lewdness, immoral activities, brawls, unnecessary
noises, including loud and disturbing music, unlawful conduct or gambling
of any kind except where provided by Public Act 865 of the 1971 General

sponte, require agencies to adopt procedures beyond those required by the Administrative Procedure Act. *Vermont Yankee Nuclear Power Corporation* v. *Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978). We therefore consider the plaintiffs' arguments regarding procedural deficiencies to be without merit.[14]

There is no error.

In this opinion the other judges concurred.

_____

Assembly, and no slot machines or gambling devices which may be used for the purpose of securing money or any other valuable things, shall be permitted or suffered upon any permit premises, nor shall such premises be conducted in such a manner as to constitute a nuisance.

"(b) The presence of dice or cards with money on tables or bars in any permit premises shall be considered as prima facie evidence of gambling.

"(c) No on-premises consumption place of business, such as a restaurant, tavern, hotel, cafe or club, shall permit entertainment consisting of impersonations either of females by males or of males by females, nor shall any permittee of any such establishment advertise, give, permit or participate in any obscene, indecent, immoral or impure show or entertainment. No such premises shall be conducted in such a manner as to constitute a nuisance by permitting an intoxicated person or persons to loiter thereon."

[14] Further, General Statutes (Rev. to 1985) § 4-168 (d) provides in part: "a proceeding to contest any regulation on the ground of noncompliance with the procedural requirements of this section shall be commenced within two years from the effective date of the regulation." The department's amended regulation took effect in December of 1976. The earliest of the consolidated cases commenced in 1981. The plaintiffs are therefore barred by General Statutes § 4-168 (d) from challenging the agency's procedural compliance in amending the regulations at issue.