Joseph SCHULTZ, d/b/a The Island Bar, Plaintiff-Appellant,†

v.

CITY OF CUMBERLAND, Defendant-Respondent.

Court of Appeals

*No. 94–3106. Oral argument May 9, 1995.—Decided June 27, 1995.*

(Also reported in 536 N.W.2d 192.)

†Petition to review dismissed.

On behalf of plaintiff-appellant, the cause was submitted on the brief of *Thomas D. Bell* and *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond and orally argued by *Matthew A. Biegert*.

On behalf of defendant-respondent, the cause was submitted on the brief of and orally argued by *Peter E. Van Sickle* of Cumberland.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Joseph Schultz operates the Island Bar in the City of Cumberland under a municipal liquor license, and he challenges a city ordinance that bans nude, semi-nude and other sexually explicit performances on the premises by subjecting the violator to a license revocation.[1] Schultz contends the

---

[1] The parties stipulated to a stay of enforcement of the ordinance pending a judicial determination of its validity.

The parties agreed that the ordinance reads:

12.03(12) Improper Exhibitions: (effective 7/1/94)

(a) It shall be unlawful for any person to perform, or for any licensee or manager or agent of the license[e] to permit any employee, entertainer or patron to engage in any live act, demonstration, dance or exhibition on the licensed premises which:

ordinance is an unreasonable interference with his constitutional rights to First Amendment free expression and Fourteenth Amendment equal protection of the law. We reject his contentions and affirm the circuit court's declaratory judgment.

This court's review of the circuit court's determination of the constitutionality of the ordinance is de novo. *See, e.g., Consolidated Freightways Corp. v. DOR*, 164 Wis. 2d 764, 771, 477 N.W.2d 44, 47 (1991). The general presumption of constitutionality accorded legislation is inapplicable where the law infringes on the exercise of First Amendment rights, and the burden of establishing the law's constitutionality is upon

1. Expose his or her genitals, pubic hair, perineum, anal region or pubic hair region; or

2. Expose any device, costume or covering which gives the appearance of or simulates genitals, pubic hair, perineum, anal region or pubic hair region; or

3. Exposes any portion of the female breast at or below the areola thereof; or

4. To engage in or simulate sexual intercourse and/or sexual contact, including the touching of any portion of the female breast or the male and/or female genitals.

(b) It shall be unlawful for any licensee or manager or agent of the licensee knowingly to permit any exhibition prohibited by subparagraph (a) to be exposed for viewing by persons within the licensed premises.

(c) Any person, partnership or corporation who violates any of the provisions of the subsection shall be subject to penalty as prescribed in Section 25.04 of the Municipal Code, in addition to liquor license suspension, revocation, or nonrenewal as provided by Section 12.03(7) of this code and by Section 125.12(1) Wis. Stats. A separate offense shall be deemed committed on each day on which a violation occurs or continues.

the government. *Madison v. Baumann,* 162 Wis. 2d 660, 669, 470 N.W.2d 296, 298 (1991).[2]

Because Schultz's challenge to the Cumberland ordinance seeks to protect the element of free expression present in "nonspeech" activities (nude or simulated nude performances), we start with the well-established test by which symbolic speech cases are adjudged.[3] *United States v. O'Brien,* 391 U.S. 367 (1968), upheld a conviction of a draft card burner who

[2] We note that the shift of the burden to prove constitutionality in First Amendment cases applied in *Madison v. Baumann,* 162 Wis. 2d 660, 470 N.W.2d 296 (1991), and other Wisconsin decisions is arguably inapplicable in cases where the government relies upon the Twenty-first Amendment. In a series of Twenty-first Amendment decisions in which First Amendment rights were interposed against nude performances in licensed liquor bars, the United States Supreme Court consistently and expressly accorded a presumption of constitutionality to the legislation. In *California v. La Rue,* 409 U.S. 109, 118-19 (1972), for example, the Court said: "Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." The Twenty-first Amendment, ratified in 1933, repealed the Eighteenth Amendment and rendered the National Prohibition Act inoperative. The Twenty-first Amendment bestowed upon the states broad regulatory power over liquor sales within their territories. *See Joseph E. Seagram & Sons v. Hostetter,* 384 U.S. 35, 42 (1966). However, if the well-established exception to the presumption of constitutionality is to be inapplicable in liquor license cases, we believe that decision must come from the Wisconsin Supreme Court.

[3] The First Amendment to the United States Constitution says: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people

asserted that his act was symbolic speech protesting America's involvement in the Vietnam war. The Supreme Court rejected O'Brien's contention that he was entitled to full First Amendment protection:

> This Court has held that when "speech" and "non-speech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 376-77 (footnotes omitted).

---

peaceably to assemble, and to petition the Government for a redress of grievances."

To date, the Wisconsin Supreme Court has considered the protection of free speech under art. I, § 3 of the Wisconsin Constitution to be co-extensive with the First Amendment. *Lawson v. Housing Authority,* 270 Wis. 269, 274, 70 N.W.2d 605, 608 (1955). While there is no question the Wisconsin Constitution may be interpreted to provide broader individual protection than granted by the United States Constitution, that determination should come from the Wisconsin Supreme Court.

The *O'Brien* analysis was then applied in *California v. La Rue*, 409 U.S. 109 (1972). *La Rue* upheld the facial validity of a state law that prohibited acts of "gross sexuality," including the display of the genitals and live or filmed performances of sexual acts in bars licensed to dispense liquor, even though not all of the prohibited acts would be found obscene. The Court noted at the outset:

> "Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment . . . ."

> While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare and morals.

*Id.* at 114 (quoting *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 41 (1966)).

In response to the First Amendment challenge, the Court observed:

> In *O'Brien* . . . the Court suggested that the extent to which "conduct" was protected by the First Amendment depended on the presence of a "communicative element," and stated:

> > "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

*Id.* at 117-18 (quoting *O'Brien*, 391 U.S. at 376).

The Court concluded:

> This is not to say that all such conduct and perform-
> ance are without the protection . . . . But we would
> poorly serve both the interests for which the State
> may validly seek vindication and the interests pro-
> tected by the First and Fourteenth Amendments
> were we to insist that the sort of bacchanalian revel-
> ries that the Department sought to prevent by these
> regulations were the constitutional equivalent of a
> performance by a scantily clad ballet troupe in a
> theatre.

*Id.* at 118.

Several later decisions dealt directly with the issue
of Twenty-first Amendment enactments restricting
nude dancing in barrooms and the interplay of the
First Amendment. *New York State Liquor Auth. v. Bel-
lanca*, 452 U.S. 714 (1981), upheld the power of a state
to prohibit topless dancing in a licensed liquor estab-
lishment. The Court ruled that "Whatever artistic or
communicative value may attach to topless dancing is
overcome by the state's exercise of its broad powers
arising under the Twenty-first Amendment." *Id.* at
718.[4]

*Newport v. Iacobucci*, 479 U.S. 92 (1986), upheld a
city ordinance prohibiting nude or nearly nude dancing
in local establishments licensed to sell liquor. The
Court recognized the state's power to delegate to a

---

[4] The statute under review provided:

No retail licensee for on premises consumption shall suffer or per-
mit any person to appear on licensed premises in such manner or
attire as to expose to view any portion of the pubic area, anus, vulva
or genitals, or any simulation thereof, nor shall suffer or permit
any female to appear on licensed premises in such manner or attire
as to expose to view any portion of the breast below the top of the
areola, or any simulation thereof.

municipality the broad power to regulate under the Twenty-first Amendment. *Id.* at 96.[5]

Schultz relies upon the First Amendment discussion found in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), to support his contention that the Cumberland ordinance is invalid because it is aimed at conduct and not nudity.

*Barnes*, which upheld the anti-nudity law in question, was not a Twenty-first Amendment decision. *Barnes* upheld an Indiana statute applicable to any public place; it penalized any "person who knowingly or intentionally, in a public place . . . appears in a state of nudity . . . ." *Id.* at 569. The law's challengers were two establishments, a lounge presenting "go-go dancing," and an adult "bookstore" whose customers watched live nude and semi-nude dancers while sitting in a booth. They objected to the requirement of the law requiring the dancers to wear "pasties" and "G-strings" when they danced. *Id.* at 563.[6]

---

[5] The ordinance under review provided:

> It shall be unlawful for and a person is guilty of performing nude or nearly nude activity when that person appears on a business establishment's premises in such a manner or attire as to expose to view any portion of the pubic area, anus, vulva or genitals, or any simulation thereof, or when any female appears on a business establishment's premises in such manner or attire as to expose to view [a] portion of the breast referred to as the areola, nipple, or simulation thereof.

[6] The Indiana statute defined "Nudity" as "the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 n.2 (1991).

The three-member plurality opinion by Chief Justice Rehnquist and the concurrences of two other justices decided that the law did not violate the First Amendment guarantee of freedom of expression even though it banned nude dancing. *Id.* It acknowledged that nude dancing of the kind sought to be performed was expressive conduct within the outer parameters of the First Amendment, although only marginally so. *Id.* at 566. It applied the four-part test of *O'Brien*, 391 U.S. at 376-77, and decided that the statute was justified despite its incidental limitations on some expressive activity.

Using the *O'Brien* analysis, five justices reasoned that the law was clearly within the state's constitutional power; that it furthered a substantial government interest; that the governmental interest in enacting the law banning public nudity was unrelated to the suppression of free expression, whether or not it was combined with expressive activity. The law does not proscribe nudity in these establishments because the dancers convey an erotic message; to the contrary, an erotic performance may be presented without any state interference as long as the performers wear a scant amount of clothing. *Barnes*, 501 U.S. at 566-72. Finally, the incidental restriction on First Amendment freedom was no greater than essential to the furtherance of the governmental interest—the statutory prohibition was not a means to some greater end. *Id.* at 572.

Justice Scalia's concurrence suggested that this law was not subject to normal First Amendment scrutiny because it is not specifically directed at expression either in practice or on its face. *Id.* at 572-81 (Scalia, J., concurring). Justice Souter's concurrence suggested that the state's interest in preventing the secondary

effects of adult entertainment establish-ments—prostitution, sexual assaults, and other criminal activity—was sufficient to justify the law's enforcement against nude dancing; that the asserted interest was plainly substantial, and that the state could have concluded that it is furthered by a prohibi-tion on nude dancing, even without localized proof of the harmful effects. Moreover, he wrote, the state's interest is unrelated to the suppression of free expres-sion, since the pernicious effects are merely associated with nude dancing establishments, and are not the result of the expression inherent in nude dancing. Finally, he decided, the restriction was no greater than was essential to further the governmental interest. *Id.* at 581-87 (Souter, J., concurring).

The four-member dissenting opinion, authored by Justice White, disagreed with the conclusion that the law was not aimed at expression because dancing "inherently embodies the expression and communica-tion of ideas and emotions." *Id.* at 587 (White, J., dissenting) (quoting *Miller v. Civil City*, 904 F.2d 1081, 1987 (1990)).

The *Barnes* dissent is especially noteworthy in relation to the present dispute because it declared: "Furthermore, if nude dancing in barrooms, as com-pared with other establishments, is the most worrisome problem, the State could invoke its Twenty-first Amendment powers and impose appropriate regu-lation." *Id.* at 594 (White, J., dissenting).

Because *Barnes* was not a Twenty-first Amend-ment case, it is not dispositive here. Further, *Iacobucci* is directly on point. The city ordinance in that case related to establishments licensed to sell liquor, and declared "[i]t shall be unlawful and a person is guilty of

performing nude or nearly nude . . . ." *See* note 5. The Cumberland ordinance here declares it a violation to "engage in any live act, demonstration, dance or exhibition . . . ." *See* note 1. We perceive no distinction between a "performance" and an "act, demonstration, dance or exhibition." Thus, as was true in *Iacobucci*, even though the ordinance is couched in terms of conduct, it is obviously aimed at nudity, simulated nudity and real or simulated sexual intercourse or sexual contact rather than speech.

*Bellanca* is also directly on point in that the United States Supreme Court viewed the issue in the case as follows: "The question presented in this case is the power of a State to prohibit topless dancing in an establishment licensed by the State to serve liquor." *Id.* at 714. The Court concluded: "The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." *Id.* at 707.

Schultz contended in his oral argument on this appeal that the absence of a statement of legislative purpose by the Cumberland City Council prevents the courts from reaching the conclusion that an important or substantial governmental interest is furthered by the ordinance. We conclude that the case law does not compel an express statement of legislative purpose.

There did not appear to be any express legislative statement of the governmental interest at stake in *State v. Thiel*, 183 Wis. 2d 505, 515 N.W.2d 847 (1994). In *Thiel*, the court unanimously rejected a constitutional free speech challenge to § 948.11, STATS., relating to the dissemination of obscene material "harmful to children." Without requiring a statement from the legislature, the court found two compelling state interests: The desire to support parents and others

567

with primary responsibility for safeguarding our youth, and the state's independent interest in the well-being of its youth. *Id.* at 526, 515 N.W.2d at 855.

Other jurisdictions have followed a similar practice. In *Knudtson v. Coates*, 519 N.W.2d 166 (Minn. 1994), the Minnesota Supreme Court upheld as valid under the Minnesota Constitution a city ordinance banning nudity in liquor establishments. The court noted that the city had presented no evidence of legislative intent or purpose. *Id.* at 167. Nevertheless, it upheld the ordinance after considering the factors that "the City Council may have felt" were important: That the particular combination of liquor, nudity and sex could be construed as a "subliminal endorsement for unlawful sexual harassment." *Id.* at 169.

The United States Supreme Court did not seem to require an express statement of the state's interest in *Barnes*. Different justices attributed disparate important governmental interests underlying the enactment of the Indiana anti-nudity statute: Chief Justice Rehnquist believed it to be the public's perceived recognition of the immorality in public nudity. *Id.* at 568. Justice Souter, on the other hand, believed it to be the secondary effects of adult entertainment establishments, prostitution, sexual assaults and other criminal activity. *Id.* at 582 (Souter, J., concurring). We conclude that the absence of an express statement of legislative purpose is not essential to its validity.

Next Schultz urges us to adopt the holding in some state jurisdictions that the broader legislative authority found in the Twenty-first Amendment is not applicable to the states absent the adoption of a similar amendment to the state constitution. This has been the view, for example, in Minnesota, New York, Alaska and

Massachusetts. A contrary view is held in Florida, Montana, New Mexico and Connecticut. In *Dydyn v. Department of Liquor Control*, 531 A.2d 170 (Conn. App. Ct. 1987), a state regulation banning nude dancing was upheld, despite the contention that the state constitution contained no counterpart to the Twenty-first Amendment. *Id.* at 173. The court first cited *La Rue*:

> Indeed, rather than merely restoring to the States their pre-existing police power over the sale of alcoholic beverages by repealing the Eighteenth Amendment, the second section of the Twenty-first Amendment expressly reserves to the States a power to regulate traffic in liquor: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, *in violation of the laws thereof*, is hereby prohibited." Thus, although the States "require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare and morals."

*Dyden*, 531 A.2d at 174 (quoting *La Rue*, 409 U.S. at 114 (emphasis in original)).

The Connecticut court concluded:

> This federally recognized power on the part of the states to control the commercial distribution of alcoholic beverages within their respective boundaries does not exist in a vacuum; nor is it limited to the confines of the federal constitution. The power conferred by the twenty-first amendment does not simply evaporate once the analysis shifts to a deter-

mination of the right to free expression under our state constitution. Rather, this independent, federal right to control the traffic in liquor subsists, and, pursuant to the supremacy clause, must be given full recognition and effect, even when we consider the provisions of our own constitution.

*Id.* (Footnote omitted.)[7]

The Wisconsin Supreme Court has traditionally interpreted the free speech protections under our constitution to be co-extensive with those declared by the United States Supreme Court interpreting the federal constitution. While we recognize that this case presents a case of first impression—whether the potential, albeit limited, encroachment on symbolic speech is broader in Twenty-first Amendment cases—any departure from decisions of the United States Supreme Court should be taken by the Wisconsin Supreme Court and not this court.

"The police power of a municipality is broad and, in general, the courts may intercede only when the exercise of that power is clearly unreasonable." *CIT Group/Equip. Fin., Inc. v. Germantown*, 163 Wis. 2d 426, 433, 471 N.W.2d 610, 613 (1991). Further, the "Twenty-first Amendment has given broad power to the States and generally they may delegate this power as they see fit." *Iacobucci*, 479 U.S. at 96. The Wisconsin legislature has granted municipalities the authority to prescribe additional regulations for the

---

[7] The United States Constitution, art. VI, cl. 2 provides in relevant part: "This Constitution . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

sale of alcoholic beverages not in conflict with ch. 125, STATS.[8] Pursuant to this authority, the City may prescribe forfeitures or license suspension or revocation for violations of a municipal ordinance. *Id.* The legislative note to § 125.10(1), STATS., indicates that it was adopted to clarify that municipal regulations may incorporate state law or provide additional regulations as long as the regulations do not conflict with state law. LAWS OF 1981, CH. 79.

Schultz next challenges the Cumberland ordinance's validity on grounds of overbreadth. He argues that the ordinance facially bars "Wearing a t-shirt picturing someone's buttocks; a couple embracing fully clothed, body-to-body, on a stage; a woman portraying a man by stuffing something down her pants in a comically exaggerated way; or a demonstration of breast feeding." We disagree. The discussion of the overbreadth challenge was unanimously rejected by our supreme court when examining the provisions of § 948.11, STATS., relating to the dissemination of obscene materials "harmful to children." *Thiel,* 183 Wis. 2d at 518-23, 515 N.W.2d at 852-54. The Court stated the general rules: "The doctrine of substantial overbreadth establishes an exception to the general rule that 'a person to whom a statute may be constitutionally applied cannot challenge the statute on the

---

[8] Section 125.10, STATS., provides:

Municipal regulation. (1) Authorization. Any municipality may enact regulations incorporating any part of this chapter and may prescribe additional regulations for the sale of alcohol beverages, not in conflict with this chapter. The municipality may prescribe forfeitures or license suspension or revocation for violations of any such regulations. Regulations providing forfeitures or license suspension or revocation must be adopted by ordinance.

ground that it may be unconstitutionally applied to others.' " *Id.* at 520, 515 N.W.2d at 853 (quoting *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989)).

Further,

> A reviewing court must view the overbreadth doctrine as "'strong medicine'" which should be employed only "with hesitation, and then 'only as a last resort.' " *New York v. Ferber*, 458 U.S. 747, 769 (1981). . . . Facial challenges to a statute . . . do not succeed when a limiting construction is available to maintain the legislation's constitutional integrity. *Broadrick* [*v. Oklahoma*], 413 U.S. [601] at 613 (1973)]. Additionally, since [the statute] encompasses both speech and conduct, the overbreadth challenge must be both real and substantial.

*Id.* at 521, 515 N.W.2d at 853.

Finally,

> A statute challenged as unconstitutionally overbroad can be "cured" by means of judicial interpretation, which provides for a narrowing and validating construction of the law. The court may also excise or sever the unconstitutional portion of the statute, leaving the rest of the legislation in force. Finally, the court may strike down the entire statute, holding it to be unconstitutional on its face.

*Id.* at 522, 515 N.W.2d at 854.

Schultz's examples of conduct he contends are facially barred by the ordinance do not withstand scrutiny. Pictures on a t-shirt do not "simulate" nudity. WEBSTER'S NEW COLLEGIATE DICTIONARY 1083 (1977) defines "simulate" as "1: to assume the outward qualities of appearance of usu. with the intent to deceive . . . ." WEBSTER'S THIRD NEW INT'L DICTIONARY

2122 (Unabr. 1976) equates "simulate" with "feign" or "imitate." A fair reading of the ordinance discloses that it is intended to ban only those simulations that give the appearance of nudity by the actor and does not purport to ban artistic reproductions of nudity.

Similarly, unless the described embrace in Schultz's example were an attempt to "simulate" sexual intercourse or sexual contact, the ordinance is not engaged. Nor does the ordinance appear to ban a performer from "stuffing something down her pants in a comically exaggerated way," absent the use of a "simulated" penis. As to the final example, a demonstration of breast feeding, apart from the fact that it would not be necessary to "[e]xpose[ ] any portion of the female breast at or below the areola thereof," the conduct prohibited by the ordinance, it seems obvious that this example fails to provide a "real and substantial" challenge to an ordinance aimed at controlling nude performances in liquor bars.

Schultz also challenges the ordinance's validity on grounds of vagueness. He argues that the language of the law "could conceivably bar gyrating one's hips on stage, as did Elvis Presley (simulated sexual intercourse); a woman performer suggestively licking her lips (simulated fellatio); or even most types of social dancing (sexual contact)." He also argues that "[a] reasonable reading of the ordinance would prohibit the wearing of a t-shirt depicting Michelangelo's David." We do not view the ordinance as preventing the conduct described for the reasons similar to our rejection of the overbreadth challenge and the established definition of "simulates." Further, as to general allegations of vagueness, a law that is constitutional on its face should not be condemned in advance, but may possibly

be condemned later because of the way it is administered in fact. *Milwaukee County Pavers Ass'n. v. Fiedler*, 922 F.2d 419, 423 (7th Cir. 1991).

*By the Court.*—Judgment affirmed.

MYSE, J. (*dissenting*). The concept that nude dancing is protected by the First Amendment to the United States Constitution is, for some, a difficult and unsettling proposition. Nonetheless, the United States Supreme Court has clearly established that nude dancing is symbolic speech because it is expressive conduct within the protections of the First Amendment. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66, 581, 587 (1991) (plurality opinion). Because this conduct is intended to convey a specific meaning or message, it is entitled to First Amendment protection even if offensive to other members of the community. *See Terminiello v. Chicago*, 337 U.S. 1, 4 (1949) (A principal "function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.").

In this case, the majority has decided that under the Twenty-first Amendment municipalities may regulate speech in licensed liquor establishments. This is a dubious conclusion that, at best, requires for its validity that the ordinance meet a number of very specific requirements.

The United States Supreme Court has interpreted the Twenty-first Amendment to grant extraordinary police powers to the states in the regulation of licensed liquor establishments. *California v. La Rue*, 409 U.S. 109, 114-15 (1972). However, as the majority notes, there is a substantial division of authority among the

states as to whether this grant of power is automatically transferred to the states or whether state action is required before the authority contained within the Twenty-first Amendment may be exercised by the states. A significant number of states have found that the grant of power afforded by the Twenty-first Amendment is not self-actuating, but requires the state to take legislative action before these extraordinary police powers may be exercised by individual states. Massachusetts, New York, Alaska and Minnesota have all held that legislative action is required before these extraordinary powers may be utilized by the state. Wisconsin has not taken any legislative action to implement this grant of authority.

The majority, however, notes that other states have found that the grant of authority contained in the Twenty-first Amendment is self-actuating. Even if we assume for the purpose of argument that no grant of legislative action is necessary to bestow these extraordinary police powers upon the state, the majority has failed to cite any case that holds that these powers are vested in any governmental unit but the state itself. Nonetheless, the majority assumes not only that the State of Wisconsin has these powers, but that the City of Cumberland has them as well. We need not determine whether the State of Wisconsin has these powers without legislative action because it was not the state that enacted the ordinance in question. Our state government can and has granted significant powers of home rule to municipalities and other governmental units within it. This power, however, is vested in the state and is only granted to municipal units by the state. No inherent power of government exists in individual units of municipal government, *Local Union No. 487 v. Eau Claire,* 141 Wis. 2d 437,

575

441, 415 N.W.2d 543, 544 (Ct. App. 1987), and the majority has failed to demonstrate any devise of power to municipal units of government permitting them to exercise the extraordinary police powers necessary to regulate conduct occurring within a licensed liquor establishment. The state's failure to grant such extraordinary powers to the City of Cumberland represents a significant defect in the majority's analysis.

The majority seeks to find a delegation of power from the state to municipalities in § 125.10, STATS., which authorizes license revocations and suspensions by a municipality. While unclear, the majority reasons that because the Cumberland ordinance, which declares certain conduct unlawful, authorizes license revocations, the municipality had the authority to enact the ordinance under § 125.10. The issue in this case, however, is not whether the municipality may enact an ordinance controlling license revocation, but whether it may enact an ordinance that penalizes persons for engaging in conduct that is protected as speech under the First Amendment to the United States Constitution. Section 125.10 does not provide municipalities with such power.

Municipalities may not regulate speech merely because it occurs in a licensed liquor establishment. For example, Edward Ben Elson announced his candidacy for political office while nude from the stage of a Madison tavern. Legitimate political discussions and debates occur on the premises of licensed establishments, including banquet halls, taverns and resorts all over this state. It is not enough to say, as does the majority, that because the speech or expressive conduct occurred in a licensed premises, it is subject to regulation.

I do not dispute that under the appropriate circumstances government may regulate nude dancing. To exercise police power, however, there must be a substantial government interest in issue. The majority correctly notes that the ordinance was not accompanied by any statement of legislative purpose. However, the problem is even more profound. The record is completely devoid of the identity of any substantial public purpose sought to be achieved by the ordinance in question. While I agree with the majority that no statement of legislative purpose is essential, I conclude that there must be some substantial governmental interest sought to be achieved by the exercise of police power. I decline to speculate as to what purpose the ordinance seeks to achieve because there is such a wide range of public purposes conceivable, some of which may support the governmental action involved and others that may not. On the basis of this record, it is entirely possible the ordinance was enacted to reflect the communities' tastes and ideals, rather than to serve the more substantial public interest of regulating prostitution, drugs or other illegal activities. Without any indication of the public purpose sought to be achieved by this ordinance or sufficient evidence of the existence of a substantial public interest in regulating nude dancing, the necessary foundation for the exercise of police power is absent.

The majority correctly identifies *United States v. O'Brien*, 391 U.S. 367 (1968), as the framework within which the regulation of symbolic speech must occur. Among the prerequisites is that "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377. The Cumberland ordinance fails this essential test. The overbreadth of the ordinance is

manifest in a variety of ways. For example, the ordinance restricts disclosing the pubic hair region. This restriction could potentially place persons wearing contemporary bathing suits in violation of the ordinance. Further, the ordinance prohibits the exposure of "any device, costume or covering which gives the appearance of or simulates genitals, pubic hair, perineum, anal region or pubic hair region." Under this restriction, a patron would be prohibited from wearing a t-shirt depicting a work of art portraying nudity. The majority disposes of this issue by simply concluding that such pictures do not "simulate" nudity. The ordinance, however, is not restricted to simulation, but renders illegal the "appearance" of nudity. Because this ordinance controls conduct significantly broader than that which is necessary to achieve its legitimate legislative purpose and because speech may not be limited any more than is essential to the furtherance of that interest, this ordinance fails the *O'Brien* test.

An inherent problem that arises when a governmental unit attempts to inhibit free speech, be it symbolic or otherwise, is determining when the government has gone beyond its legitimate powers. When one starts upon this perilous course and sanctions the government's regulation of symbolic speech that seems to have little social value, it throws the door wide open to government regulation of all speech, including that which has the utmost value to public discourse. The conduct subject to regulation in this case occurred in a tavern where admission is limited to those who exceed the age specified by law. Those who come to the tavern do so voluntarily and attend as a matter of choice. If there is a legitimate public interest in regulating nude dancing, the government may lawfully exercise its police power to regulate this activity. It must, however,

demonstrate a legitimate public interest that is substantial and meaningful and must tailor the regulation so as to intrude upon the speech only to the extent essential to further its interest. Because this ordinance fails on both counts, I dissent.