[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal from the decision of the defendant, the Commissioner of the Department of Motor Vehicles (DMV), to suspend the operator's license of the plaintiff, Linda Labenski.
The Return of Record indicates that on April 24, 1991, the plaintiff was involved in a motor vehicle accident which caused her to suffer injuries requiring medical assistance. This assistance was rendered to her by Dr. Melissa Klaus of the emergency department at Manchester Memorial Hospital. During this treatment the plaintiff disclosed to Dr. Klaus that she was currently taking medication prescribed for her by a neurologist, Dr. Hornblow. Dr. Klaus contacted Dr. Hornlow who informed her that the plaintiff suffers from a longstanding, idiopathic CT Page 1752 seizure disorder which is poorly controlled by medication. He further related that he has warned the plaintiff on multiple occasions in the past not to operate a motor vehicle.
On May 1, 1991, Dr. Klaus sent a letter containing the above information to the DMV (Return of Record, Item 5). This letter also included Dr. Klaus' opinion that the accident which resulted in the plaintiff's injuries was caused by the plaintiff's loss of consciousness attendant to a seizure. Dr. Klaus also noted that she admonished the plaintiff not to drive.
Upon receipt of this information the DMV notified the plaintiff, on May 28, 1991 that, effective June 8, 1991, her license would be suspended under the provisions of C.G.S.14-111(a) because of the state of her health (Return of Record, Item 1). This notice also informed the plaintiff that she could request a hearing regarding the impending suspension. The plaintiff requested a hearing.
On October 2, 1991, the DMV notified the plaintiff that the hearing was scheduled to occur on November 7, 1991 (Return of Record, Item 2). This notice also stated that the purpose of the hearing would be to determine whether the plaintiff met "minimum physical standards" to operate a motor vehicle safely; that the plaintiff would have an opportunity to respond to the claim that she failed to meet the health standards; that she could be represented by an attorney; and that if was decided after the hearing that she failed to meet the physical requirements to drive a motor vehicle safely her license could be suspended or made subject to periodic medical reporting to insure future fitness to drive. Several statutory and regulatory provisions were cited as possibly pertinent to the hearing, including C.G.S. 14-36e and 14-46 through 14-46g.
On November 7, 1991, pursuant to C.G.S. 14-4a, the matter was heard by a hearing officer (Return of Record, Item 3). The officer received into evidence the letter from Dr. Klaus which precipitated the inquiry. At the hearing the plaintiff stated that she had not seen Dr. Hornblow for seven years; that she was not lucid when being treated by Dr. Klaus, that she was taking medication prescribed by Dr. Hornblow; that Dr. Hornblow's warnings to her about not driving occurred long ago; and that she had been driving for thirty-six years. She admitted having the seizure disorder but doubted that a seizure caused the accident in which she was injured. CT Page 1753
The hearing officer suggested to the plaintiff that she attempt to obtain a neurological report from a doctor stating that she had been seizure free for at least six months and that the disorder was controllable by medication.
On February 6, 1992, the hearing officer issued his decision finding that Dr. Klaus attributed the cause of the accident to a seizure experienced by the plaintiff; that the plaintiff's seizure disorder was poorly controlled by medication; that the disorder was a longstanding one; and that the plaintiff had been warned by her doctors not to drive (Return of Record, Item 7). He further found that the plaintiff had proffered no medical reports refuting the opinions of Dr. Hornblow and Dr. Klaus. The hearing officer concluded that the plaintiff failed to meet minimum physical standards for safe operation of a motor vehicle within the ambit of C.G.S.14-36(e) and 14-46 through 14-46g. He ordered the plaintiff's driver's license suspended indefinitely, and to be reinstated only upon the receipt of a favorable neurological report.
On April 1, 1992, the plaintiff filed this appeal under the Uniform Administrative Procedure Act (UAPA), C.G.S. 4-183(a). On February 9, 1993, this court heard the appeal.
Law
The plaintiff is aggrieved by the defendant's decision. The defendant, in its answer, has admitted that the plaintiff is the person whose operator's license was suspended as a result of the administrative hearing. This suspension specially and injuriously affects the specific personal and legal interest of the plaintiff to be able to operate legally a motor vehicle on the highways of Connecticut. Therefore, she meets the two-fold test for establishing aggrievement, Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525 (1987), p. 530.
The plaintiff urges the court to sustain her appeal, under C.G.S. 4-183(j), on four grounds, viz. that the notice of the administrative hearing was inadequate and denied her due process of law; that the decision of the hearing officer was unsupported by substantial evidence; that the suspension ought to have been stayed until the final decision was rendered by the hearing officer; and that the suspension deprives the plaintiff of the equal protection of the law guaranteed to persons with physical CT Page 1754 disabilities by the Connecticut Constitution.
 I
The plaintiff's first claim is that the notice of the hearing was deficient in that it makes general reference to minimum physical standards without explicitly stating what those standards are. The right to notice is fundamental to due process and must be afforded at a meaningful time and in a meaningful manner, All Brand Importers, Inc. v. Department of Liquor Control, 213 Conn. 184 (1989), p. 208. This right is not a technical conception unrelated to time, place, and circumstances, Ibid.
The UAPA, in C.G.S. 4-177(b), sets forth four requirements for notice of administrative hearings. The court finds that the notice provided to the plaintiff in this case satisfies all four requirements. The only requirement in dispute is whether the letter of October 2, 1991, includes "a short and plain statement of the matters asserted." The second and fourth paragraphs of this letter clearly state that the purpose of the impending hearing was to address the claim that the plaintiff was not in physical condition to operate a motor vehicle safely.
Furthermore, the hearing was arranged at the plaintiff's request. Her request came in response to the suspension notice dated May 28, 1991, which notice indicated that the basis for the suspension was "as a result of a finding, after review of information regarding your medical condition, that you continued operation of a motor vehicle would be dangerous to you and others."
The plaintiff makes no claim that she arrived at the hearing and was confronted with unexpected claims. Indeed, the hearing officer inquired of the plaintiff if she was prepared to proceed, and she indicated that she was (Return of Record, Item 3, p. 2). At no time during the hearing did she express surprise at the subject matter being considered or request a postponement to respond to unanticipated claims. Nor did she complain that the general nature of the information in the notice misled her.
The court fails to see how a lack of expressly quantified standards in the notice violated the plaintiffs due process. The right to notice has to do with being informed of the nature CT Page 1755 of the claim to be addressed at the hearing and not with being informed of the manner in which that claim might be proved at the hearing. Here, the plaintiff was notified that the purpose of the hearing was to determine whether her medical condition posed a danger to herself or others warranting suspension of her driving privileges. Due process requires nothing more with respect to notice.
 II
Next, the plaintiff contends that she was prejudiced by the decision of the hearing officer in that that decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record in violation of the standard set forth in C.G.S. 4-183(j)(5). The hearing officer's decision was based on the letter of Dr. Klaus and the plaintiff's statements at the hearing. The plaintiff argues that, because this letter was hearsay and double hearsay, it lacked sufficient reliability to warrant consideration by the hearing officer.
It is fundamental that administrative tribunals are not strictly bound by the rules of evidence and that they may consider exhibits which would normally be incompetent in a judicial proceeding, so long as the evidence is reliable and probative, Lawrence v. Kozlowski, 171 Conn. 705 (1976), p. 710. Evidence is admissible if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs, Ibid., p. 711. The UAPA contemplates that the hearing process will be informal, and there is no requirement that witnesses must physically testify, Ibid., p. 723.
The court finds that the letter of Dr. Klaus is evidence of the type commonly relied upon by reasonably prudent men. The letter did not include off-the-cuff remarks overheard in casual conversation. It cannot be characterized as gossip. This letter was a formal one directed to a governmental official in his official capacity. It was authored specifically for the purpose of alerting the DMV that the plaintiff's fitness to drive was questionable.
Section 1-46 specifically permits physicians to report such information, and C.G.S. 14-46d exposes such physicians to be summoned before the Commissioner at a hearing which results from such information. The serious and important nature of CT Page 1756 communications between physicians and the DMV is underscored by C.G.S. 14-46f which confers immunity from civil suit to the authors of such letters under certain conditions.
Dr. Klaus had a doctor-patient relationship with the plaintiff. Despite the plaintiff's disagreement with Dr. Klaus' conclusions, Dr. Klaus cannot be construed as having an inimical or adversarial relationship with the plaintiff. There was no evidence that Dr. Klaus bore any grudge toward the plaintiff nor that Dr. Klaus stood to gain any personal or professional benefit by composing and sending the letter.
Her consultation with Dr. Hornblow appears to have arisen out of medical necessity. Dr. Hornblow was the plaintiff's neurologist, at least to the extent that the plaintiff continued to receive prescription medication under his aegis. At the hearing, the plaintiff conceded Dr. Hornblow's diagnosis and acknowledged his warnings to her. The opinions in the letter were never refuted by any other physician despite the ample opportunity for the plaintiff to have acquired such evidence.
Certainly, the contents of the letter, if reliable, were probative of the issue of the plaintiff's medical condition and her ability to drive safely, and the plaintiff, at oral argument, has conceded as much. The factors noted above indicate to the court that the letter and opinions expressed therein were reliable, and the hearing officer rightfully considered the letter and its contents in reaching his decision.
It is not the function of the trial court to retry the case, Buckley v. Muzio, 200 Conn. 1 (1986), p. 3. The credit to be given the letter and the factual inferences to be drawn from it are matters within the province of the hearing officer, All Brand Importers, Inc. v. Department of Liquor Control, supra, p. 192. That the court might have reached other conclusions based on the same evidence does not warrant reversal of the administrative decision, Lawrence v. Kozlowski, supra, pp. 707 and 708.
Given the reliable and probative evidence before the hearing officer, viz. the letter from Dr. Klaus and the plaintiff's statements, the hearing officer could reasonably have concluded, as he did, that the plaintiff suffers from a longstanding seizure disorder; that the disorder is idiopathic, i.e. of unknown cause; that she recently experienced a seizure CT Page 1757 which resulted in a motor vehicle accident with injuries to herself; that her medication was not controlling the disorder so as to allow her to drive safely; and that she had ignored the repeated warnings of her neurologist to avoid driving. This evidence and these findings were sufficient to meet the substantial evidence standard set forth in Lawrence v. Kozlowski, supra.
 III
The plaintiff also contends that the DMV ought to have stayed her license suspension until after the outcome of the hearing. Because this court can provide no practical relief to the plaintiff for the suspension which preceded the administrative hearing even if the court decided this issue in her favor, the court regards this claim as moot, Daly v. DelPonte, 27 Conn. App. 495 (1992), pp. 502 and 503.
 IV
The plaintiff's final claim is that the suspension of her license because of her medical condition deprived her of the equal protection of the law guaranteed by the Connecticut Constitution, Article I, Section 20, as amended by Article XXI. That constitutional provision states inter alia, that no person shall be denied the equal protection of the law based on physical disability.
This issue was recently addressed by the Appellate Court in the case of Daly v. DelPonte, supra. The Appellate Court held that the placing of a motor vehicle license holder on medical probation does not violate the Connecticut Constitution if such action is necessary to achieve a compelling state interest and is narrowly tailored toward achieving that goal, Ibid, p. 505. The constitutional provision protecting the rights of persons with physical disabilities from discrimination shifts the burden to the defendant to demonstrate compelling reasons to discriminate, Ibid, p. 506.
However, the state's compelling interest in highway safety is not open to dispute, Ibid. In cases where an individual's fitness to drive safely is reasonably called into question, the defendant must satisfy himself that public safety is not jeopardized, Ibid. And where "the defendant has reason to believe that a person may experience periodic seizures, this CT Page 1758 compelling interest in public safety requires the defendant to monitor the individual's medical condition," Ibid. (emphasis added).
Unlike the instant case, the plaintiff in Daly v. DelPonte, supra, was permitted to continue driving in a probationary status with certain reporting conditions attached. In the case sub judice the defendant has suspended the plaintiff's license indefinitely with the possibility of reinstatement upon the submission of a P-142N, i.e., a neurological report. The plaintiff contends that the defendant's decision with respect to her fails to tailor his action narrowly to achieve the compelling state interest in highway safety.
The defendant counters that certain factors distinguish the plaintiff's situation from that addressed in Daly v. DelPonte, supra, and these differences justify the more restrictive action that was ordered. The court agrees.
In Daly v. DelPonte, supra, the license holder demonstrated that he was undergoing close supervision by his neurologist throughout the administrative process. He had submitted form P-142N on a regular basis. His neurologist had altered his medication to lesson the likelihood of a seizure episode. His neurologist specifically and expressly approved his resumption of driving. Perhaps, most significantly, the license holder displayed an attitude of complete cooperation with his neurologist's recommendation.
In the instant case, the plaintiff was unable to provide any expert opinion indicating that her disorder was being controlled by medication and that she might resume driving. She submitted no P-142N forms to the defendant. The hearing officer had no reason to conclude that the plaintiff's disorder was being addressed medically nor that her physical condition had changed since the accident. The only medical reports available to him indicated that Dr. Hornblow and Dr. Klaus were of the opinion that the plaintiff ought not operate a motor vehicle, and that the plaintiff had ignored repeated similar warnings in the past.
With this background, the defendant's order suspending the plaintiff's license until she could submit a P-142N was both necessary and as narrowly constructed as regard for public safety would reasonably allow. CT Page 1759
For the above reasons, the decision of the defendant is affirmed.
Sferrazza, J.