[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CROSS MOTIONS OF SUMMARY JUDGMENT
The plaintiffs, Seymour Manheimer, Emma Lincoln and Shirley Ableman, as residents and electors of the City of New London (hereinafter "defendant") filed a one count complaint on October 26, 1992, alleging that the City of New London acted improperly and in violation of the New London Town Charter when it placed a referendum question to repeal the Ocean Beach Park Board on the November 3, 1992 ballot. The plaintiffs seek relief declaring the election void[1] and an injunction restraining the City from dissolving the Ocean Beach Park Board.
On December 7, 1992, the defendant filed an answer. The plaintiffs' claims for relief essentially seek a declaratory judgment that the election held on November 3, 1992 was neither a New London "municipal election" nor a "special election" within the meaning of the applicable law and further seek to declare the referendum vote which dissolved the Board null and void.
The defendant filed a motion for summary judgment on the grounds that: (1) the term "municipal election" is CT Page 6439 used in the New London Town Charter to refer to any election where residents are voting, and (2) the issue of whether the election of November 3, 1992 was a "city election" or a "municipal election" is moot.
The plaintiffs also moved for summary judgment on the grounds that there are no genuine issues of material fact as to whether the November 3, 1992 election was a "municipal election" or a "special election."
The parties filed memoranda of law and were heard at oral argument on short calendar.
 I.
A motion for summary judgment shall be granted "`if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116
(1990), quoting Zichichi v. Middlesex Memorial Hospital,204 Conn. 399, 402, 528 A.2d 805 (1987). A material fact is simply a fact which will make a difference in the result of the case. Genco v. Connecticut Light and Power Co., 7 Conn. App. 164,167, 508 A.2d 580 (1986). The burden of proof is on the moving party. State v. Goggin, 208 Conn. 606, 616,546 A.2d 250 (1988). The facts presented may be viewed in the light most favorable to the party opposing the motion. Id. "`To satisfy his burden, the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.'" Fogarty v. Rashaw, 193 Conn. 442, 445,476 A.2d 582 (1984), quoting Dougherty v. Graham, 161 Conn. 248,250, 287 A.2d 382 (1971). Issue finding, rather than issue determination, is the key to the procedure. Yanow v. Teal Industries, Inc., 178 Conn. 262, 269, 422 A.2d 311 (1979).
A declaratory judgment action is a special proceeding under General Statutes 52-29, as implemented by 389 and 390 of the Practice Book. Rhodes v. Hartford,201 Conn. 89, 92, 513 A.2d 124 (1986). There must be an issue in dispute or uncertainty of legal relations which requires settlement between the parties. Doublewal Corporation v. Toffolon, 195 Conn. 384, 391-92, 488 A.2d 444 (1985). Further, the pleadings must be closed before declaratory CT Page 6440 judgments can be granted. Id., 391-93.
 II.
A. The November 3, 1982 election.
Section 169 of the New London Town Charter provides:
 Procedure for repeal of act [re Ocean Beach Park Board].
 After said board shall have been in operation for three years, if a petition signed by electors of the city equal in number to at least ten percent of those who voted at the last preceding regular city election, be filed with the city clerk requesting that this amendment to the city charter be repealed, and, upon such petition being found sufficient by the city clerk, the council shall submit to the electors at the next municipal election, held not less than thirty days after the filing of said petition, or at a special election to be held not sooner than such time, the question: "Shall the charter amendment providing for the Ocean Beach Park Board be repealed?" If a majority of the electors voting thereon vote in the affirmative, the powers and duties of said board shall cease at the close of the fiscal year next following the date of such election and be performed as otherwise provided in the charter of the city. (Referendum of 11-3-1, III).
Plaintiffs allege in their complaint that a petition to repeal the charter amendment providing for the Ocean Beach Park Board was presented to the city clerk, and the city council improperly placed the referendum question on CT Page 6441 the ballot of the presidential and statewide election held on November 3, 1992. The plaintiffs allege that since the November 3, 1992 election was neither a "municipal election" nor was designated to have been a "special election," the placing of the referendum question on the November 3, 1992 ballot was improper and contrary to the requirements of the New London Town Charter amendment referred to above.
The defendant, in its memorandum of law in support of its motion for summary judgment, argues that the term "municipal election" is used in the Town Charter to refer to any election where residents are voting. The defendant cites 10 of the New London Town Charter for its authority, which provides:
 Date of regular election; opening of polls.
 A city election for the choice of officers shall be held biennially in the odd-numbered years on the first Tuesday after the first Monday of November, which shall be deemed the regular city election. At all city elections, the polls shall remain open from such time in the forenoon to such time in the afternoon as is prescribed by law for state elections. (S.A. No. 483 of 1933, 3; S.A. No. 372 of 1953, 1; S.A. No. 123 of 1957, 1; S.A. No. 378 of 1965, 1.
The defendant argues that because 10 uses the term "city election" and not "municipal election" to refer to the biennial election for local officials, a "city election" occurs in odd-numbered years, and that any other election, such as the November 3, 1992 election which occurred in an even-numbered year, is a "municipal election." Therefore, argues the defendant, the referendum question was properly placed on the November 3, 1992 ballot.
Conversely, the plaintiffs, in their memorandum of law in opposition to the defendant's motion for summary judgment, respond by arguing that "city election" and CT Page 6442 "municipal election" must mean the same thing in order for the provisions of the Town Charter to be consistent with the requirements of state law. The plaintiffs cite to provisions of the New London Town Charter to evince their position.
First, plaintiffs cite 160 of the New London Town Charter, which provides, in part:
 Planning and Zoning Commission. . . there shall be three members from the major party being defined as that party receiving the highest number of votes cast for its candidates in the 1981 City Municipal Election and two members from the minority party being defined as that party receiving the second highest number of votes cast for its candidates in the 1981 City Municipal Election and one member from the third party being defined as that party receiving the third highest number of votes cast for its candidates in the 1981 City Municipal Election. . . ."
Plaintiffs argue that the above section treats the terms "city election" and "municipal election" as identical in meaning. Moreover, plaintiffs argue that, pursuant to 160, a "city municipal election" is considered to be the election occurring in the odd-numbered years where city candidates are elected.
Second, plaintiffs argue that chapter eight of the New London Town Charter which applies to elections indicates that "at all municipal elections. . . the polls shall remain open from 6:00 a.m. until 8:00 p. m. . . ."
Plaintiffs argue that since the above provision contains no procedures for the conduct of "city elections," references to "city elections" must be interpreted to be coterminous in time and meaning with "municipal elections," and are therefore one and the same.
In their memorandum of law in support of their motion for summary judgment, plaintiffs argue that, pursuant CT Page 6443 to General Statutes 9-1, the term "municipal election" is defined as "the regularly recurring election held in a municipality at which the electors of the municipality choose public officials of such municipality." In addition, plaintiffs attached the affidavit of plaintiff Manheimer, which states that "upon the ballot of November 3, 1992, there were no candidates for city council [or]. . . any other municipal office and there were no municipal questions upon the ballot. . . ." (Affidavit of Manheimer, dated 3/11/93, para. 10). Plaintiffs argue that since the November 3rd election did not include any candidates for public office of the municipality, the election could not qualify as a "municipal election" as defined in General Statutes 9-1.
Finally, plaintiffs argue in their memorandum in support of their motion for summary judgment that, pursuant to article III, 21, of the New London Charter, the words "city" and "municipal" must have the same meaning.
Article III, 21 provides:
Election
 The legislative and executive powers shall be vested in a council of seven members elected from the city at large. At the regular city election to be held in November, 1967, the entire council of seven members shall be chosen for a term of two years and at each subsequent biennial election the entire council of seven members is to be chosen. The city elections for 1965 and 1966 shall be held in the manner prescribed before the effective date of this act except that those officers elected in September of 1965 and 1966 shall be elected to a term of office to expire on the first Monday of December, 1967. (S.A. No. 378 of 1965, 7).
Plaintiffs contend that, pursuant to 21, members of the council would be elected at the "regular city CT Page 6444 election" held biennially in odd-numbered years. Therefore, argue the plaintiffs, 21 defines a "city election" to include the election of members of the city council in odd-numbered years. Plaintiffs then conclude that since elections of city council members at "city elections" are to be held only in biennial odd-numbered years and this establishes the procedure for the change of municipal government, the words "city" and "municipal" must have the same meaning.
In the construction of a city charter, ordinarily the rules of statutory construction are applied. Bridgeport Connecticut Police Local 1159 v. Board of Police Commissioners of the City of Bridgeport, 8 CSCR 123 (January 5, 1993, Leheny, J.). "`Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries.'" Southington v. State Board of Labor Relations, 210 Conn. 549, 561,566 A.2d 166 (1989), quoting Doe v. Manson, 183 Conn. 183, 186,438 A.2d 859 (1981).
As stated previously, General Statutes 9-1 defines a "municipal election" as "the regularly recurring election held in a municipality at which the electors of the municipality choose public officials of such municipality."
General Statutes 9-1 further defines "state election" as "the election held in the state on the first Tuesday after the first Monday in November in the even-numbered years. . . ." Article II, 10, of the New London Charter states: "A city election for the choice of officers shall be held biennially in the odd-numbered years on the first Tuesday after the first Monday of November, which shall be deemed the regular city election."
Although the terms "city election" and "municipal election" may not be identical as plaintiffs suggest, the court agrees with the plaintiffs that the November 3, 1992 election was neither a "municipal election" nor a "special election," as was required by the New London Charter for the voting on a referendum question.
In order to be a "municipal election" pursuant to General Statutes 9-1, candidates for city offices of the municipality must be on the ballot. In order to be a "city CT Page 6445 election" pursuant to article II, 10 of the New London Town Charter, it must be one which regularly recurs every two years in the odd-numbered years. By definition, the term "city election" (and by comparison, the term "state election" as defined in General Statutes 9-1 supra) solely address when a "city election" must be held: every two years, and in odd-numbered years. Yet, the term "municipal election," as defined in General Statutes 9-1, addresses a different issue, namely, what substantively must be on the ballot. Therefore, by their very nature, the two terms differ. Moreover, since three different terms ("city election," "municipal election," and "special election") are all included in the same passage of 169 of the New London Charter, it is evident that the framers of the Charter attached different meanings to the three referenced election terms.
However, this is not to say that defendant's assertion that any election where residents are voting which is not a "city election" is a "municipal election" is accurate. To reiterate, in order to be a "municipal election," candidates for city offices must be on the ballot. Plaintiff Manheimer has submitted an affidavit which states that no city public official's name was on the ballot on November 3, 1992. A copy of the ballot was not made an exhibit and defendant has not submitted a counter-affidavit challenging the plaintiffs' position nor was this fact disputed in the pleadings. Plaintiffs' affidavit, together with the absence of any evidence offered by the defendant, gives credence to the plaintiffs' position that a New London "municipal election" did not take place. Moreover, the New London City Council did not designate that a "special election" be held on November 3, 1992, as the parties conceded on oral argument and admitted in the pleadings. Therefore, it is evident then that the referendum to dissolve the Ocean Beach Park Board was improperly presented to the electors of the City of New London and the vote thereon is null and void.
B. Mootness
The defendant also argues in its memorandum of law in support of its motion for summary judgment that the issue of whether the election of November 3, 1992 was a "city election" or a "municipal election" is moot. CT Page 6446
Mootness implicates the court's subject matter jurisdiction. See Daly v. Delponte, 27 Conn. App. 495, 502,608 A.2d 93, cert. granted, 223 Conn. 903, 610 A.2d 177
(1992), rev'd on other grounds, 225 Conn. 499 (1993).
Filed with the court on November 9, 1992, was a Stipulation in Lieu of Hearing (File #102, dated November 4, 1992) which was signed by the parties. The stipulation stated that the parties agree that the temporary restraining order issued by the court on October 30, 1992 (Hurley, J.) would continue until further order of the court. The clear meaning of the stipulation as stated was that "paragraph two of the temporary restraining order shall continue without prejudice until further order of the court." (Stipulation, 11/4/92).
Paragraph two states: "the City of New London including its agents, servants and employees. . . are hereby restrained and temporarily enjoined from. . . (2) taking any action to dissolve the Ocean Beach Park Board, regardless of the outcome of the voting on the referendum on November 3, 1992 until further order of the court."
It is not the province of courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. The doctrine of mootness is applicable to decrees and orders relating to injunctions. See Platt v. Newman,13 Conn. App. 205 (1988).
The dispositional question is what, if any, actual relief could be granted by the court. Sgarellino v. Hightower, 13 Conn. App. 591 (1988). The ability therefore to grant relief negates the mootness claim. The defendant relies on Fromer v. Tree Warden, 26 Conn. App. 599 (1992), a case where the trial court dismissed the plaintiff's appeal from an order to remove trees from a pedestrian mall, because the trees were already cut down. The appellate court upheld the trial court's dismissal because, as the trees were already removed, no practical relief could have been afforded.
In this case, the Ocean Beach Park Board has not been cut down and is still in existence. There remains an CT Page 6447 actual controversy in existence. The mootness claim of defendant also fails.
Accordingly, the plaintiffs' motion for summary judgment is granted and the defendant's motion is denied. Judgment shall enter for the plaintiffs as follows:
(1) The referendum of November 3, 1992 was without authority and the voting thereon is null and void.
(2) The temporary injunction heretofore issued is made permanent so that the City of New London, its agents, servants and employees are enjoined from taking any action to dissolve the Ocean Beach Park Board, except pursuant to a special election or municipal election as set forth in its Charter.